UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTHONY MARTIN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SIMMERMAN Sgt., *et al.*, ) <br> ) <br> Defendants. ) | No. 2:23-cv-00512-JRS-MG |

**ORDER GRANTING UNOPPOSED MOTION FOR SUMMARY JUDGMENT AND DISMISSING CLAIMS AGAINST DEFENDANTS TEMPLETON AND COAKLEY**

This action is based on Anthony Martin's allegations that his range flooded with wastewater in August 2022, that three officers denied his requests for help and kicked the water toward his cell, and that two grievance officers offered no relief when he submitted a grievance about the incident. The grievance officers seek summary judgment on the affirmative defense that Mr. Martin failed to exhaust administrative remedies before filing suit. For the following reasons, their unopposed motion is granted, and Mr. Martin's claims against the grievance officers are dismissed.

**I. Summary Judgment Standard**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is required to consider only the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour the record" for evidence that is potentially relevant. *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

Mr. Martin has not filed a response to the summary judgment motion, and the deadline to do so has passed. When a summary judgment motion is unopposed, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment," though, "the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II. Prison Litigation Reform Act and Exhaustion of Administrative Remedies

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). In this case, the substantive law is the Prison Litigation Reform Act (PLRA), which requires that a prisoner exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)).

"Because exhaustion is an affirmative defense," the defendants face the burden of establishing that "an administrative remedy was available and that [Mr. Martin] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 578 U.S. 632, 642 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* (internal quotation omitted).

3

### III. Facts

This action is based on the following allegations, which the Court previously summarized as follows:

> On the morning of August 29, 2022, a pipe burst in an inmate's cell up the range from Mr. Martin's. Wastewater flooded the range. Sergeant Smith, Sergeant Simmerman, and Officer Roridan were on the range. Mr. Martin asked them if somebody could clean the water up. Instead of doing so, the officers played in the water, kicked it toward Mr. Martin's cell, and said it was not their problem.
>
> The wastewater remained on the range floor from morning until night. Staff members waded through the wastewater while passing out medication, collecting mail, and delivering meals.
>
> Mr. Martin filed a grievance regarding the officers' refusal to clean up the wastewater. Grievance Specialists Templeton and Coakley offered no relief, stating that the officers "had other important" matters to deal with and could not clean up the water.

Dkt. 11 at 1. Based on these allegations, the Court recognized plausible Eighth Amendment claims against Sergeant Smith, Sergeant Simmerman, Officer Roridan, and Grievance Specialists Templeton and Coakley. *Id.* at 1–2.

The Indiana Department of Correction (IDOC) maintains an Offender Grievance Process, which is an administrative remedy program designed to allow inmates "to express complaints and topics of concern for the efficient and fair resolution of legitimate offender concerns." Dkt. 30-2 at § II. Inmates can use the grievance process to resolve concerns about "[a]ctions of individual staff, contractors, or volunteers" and "concerns relating to conditions of care or supervision within the" IDOC. *Id.* at § IV(A).

To exhaust the grievance process's remedies, an inmate must complete four steps. First, the inmate must attempt to resolve his concern informally. *Id.* at § IV (formal grievance must follow "unsuccessful attempts at informal resolutions"). Second, if the inmate is unable to achieve a satisfactory resolution informally, he must submit a formal grievance to the grievance specialist.

4

*Id.* at § X. Third, if the inmate is dissatisfied with the grievance specialist's response, he must submit an appeal to the grievance specialist, who will transmit the appeal to the warden or the warden's designee. *Id.* at § XI. Fourth, if the inmate is dissatisfied with the warden's response, he must submit a second appeal to the IDOC's grievance manager. *Id.* at § XII.

When an inmate submits a proper grievance, it is logged into an electronic database. Dkt. 30-1 at ¶ 17. When an inmate submits a formal grievance that fails to meet minimum criteria, it is returned to the inmate unprocessed. *Id.* at ¶ 15.

Mr. Martin has generated dozens of grievances, appeals, and responses since his range allegedly flooded in late August 2022. *See* dkt. 30-3 at 6–12. Only one, dated September 6, 2022, concerns any of the allegations underlying this lawsuit:

> I'm grieving Warden Vanihel, Captain Voightchild, Major Russell, Captain White, Lt. Holcomb, Sgt. Smith, Case Manager Gonthier, Sgt. Zimmerman for failure to protect, failure to clean up feces, unsanitary water, and retaliation. On 8-29-2022 a toilet over flowed on B-East 6 Range approx 8 AM. [See camera footage] No one cleaned up the water, which it flooded out my cell, I reported it to the mentioned above and nothing was done. The water remained on the floor until 4:30 PM, which the officers sergeant's and Lt. Holcomb escorted through the water and ignored to clean it up! This was a safety and security issue and formed a catastropical atmosphere, which during the process damaged important papers, property, headphones of minor. this is an grievable issue and I would like to pursue it, because I was told by Lt. Holcomb, Sgt. Smith and Sgt. Zimmerman "If you want to be animals then I'll let you live like animals"! This was clearly retaliatory.

Dkt. 30-6 at 3 (all misspellings and punctuation in original). Nondefendant grievance specialist S. Crichfield returned the grievance unprocessed on September 12 with the following explanation: "Frivolous—staff clean up as soon as time allows. Just because it was not done on your expected timeline does not make it wrong. Personal property is a tort claim." *Id.* at 2.

No records indicate that Mr. Martin further pursued any grievances regarding the August 29 flooding, the prison staff's failure to clean up the flood more urgently, or the handling of any grievances by Grievance Specialists Templeton and Coakley. Dkt. 30-1 at ¶¶ 37–41.

5

## IV. Analysis

The defendants designated evidence that administrative remedies were available to Mr. Martin and that he has pursued administrative remedies for a broad range of issues. In fact, he pursued administrative remedies regarding his allegations that Sergeant Smith, Sergeant Simmerman, and Officer Roridan either disregarded or engaged in misconduct regarding the flood water.

The defendants also designated evidence that Mr. Martin did not pursue administrative remedies regarding any alleged misconduct by Defendants Templeton and Coakley in mishandling or ignoring grievances concerning the August 29 flooding. His grievance describing the flooding and other staff members' misconduct does not indicate that he submitted any other grievances on the subject, much less that such grievances were mishandled or ignored. And the grievance records do not indicate that Mr. Martin pursued any later grievances regarding the flooding or the grievance specialists' handling of grievances about the flooding.

In short, the record indicates that Mr. Martin had administrative remedies available to him if Defendants Templeton and Coakley mishandled or ignored grievances regarding the flooding, but that he did not pursue any grievances against them.

The defendants also designated evidence indicating that Mr. Martin at least attempted to pursue administrative remedies regarding the correctional officers' handling of the flooding, and they do not seek summary judgment for those officers. However, Mr. Martin's pursuit of administrative remedies concerning some of the conduct giving rise to his complaint does not excuse his failure to pursue administrative remedies for the other conduct at issue. *See King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023) (District court properly dismissed claim for failure to exhaust because, although plaintiff pursued administrative remedies regarding other conduct at

issue in the lawsuit, it "did not even mention" the allegations underlying that claim.). Mr. Martin did not give the prison notice of, or an opportunity to address his claims against the grievance defendants.

## V. Conclusion

The defendants' motion for partial summary judgment, dkt. [30], is **granted**. Claims against Defendants Coakley and Templeton are **dismissed without prejudice**. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*all* dismissals under § 1997e(a) should be without prejudice."). The **clerk is directed** to **terminate** defendants Coakley and Templeton from the docket. No partial final judgment will issue. The Court will issue a separate order concerning development of the claims that remain pending.

**IT IS SO ORDERED.**

Date: 12/2/2024

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

ANTHONY MARTIN
945288
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Brandyn Lee Arnold
INDIANA ATTORNEY GENERAL
brandyn.arnold@atg.in.gov

Alexander Thomas Myers
Office of Indiana Attorney General
alexander.myers@atg.in.gov

7